# MARCH, 1922

PHILADELPHIA UNDERWRITERS' AGENCY OF FIRE INSURANCE ASSOCIATION OF PHILADELPHIA ET AL. v. W. F. DRIGGERS ET AL.

No. 2996.    Decided March 8, 1922.

(238 S. W., 633.)

1.—Insurance—Fire—Warranties—Invoices, Account Books, Examination etc. —Statute.

The Act of April 2, 1913, Laws, 23d Leg., p. 194, regarding contracts of fire insurance, has reference only to warranties and provisions in the policy a breach of which might contribute to bring about a fire loss.    (P. 398).

2.—Same.

Pleadings in answer to an action on a policy of fire insurance asserted warranties by insured; to have yearly invoices; to keep safely certain books of account showing changes in stock; and in case of loss to submit on demand to examination on oath as to his loss; with breach of all such undertakings and consequent avoidance of the policy in accordance with its terms.    These provisions not being within the purview of the Act of April 2, 1913, it was error to sustain exceptions to the plea as one made ineffective as a defense by the statute.    (Pp. 396-398).

3.—Agreement to Submit to Arbitration.

Breach of the undertaking by insured to submit to examination under oath does not operate as a bar to recovery; but is to be pleaded in abatement, with the effect, if the plea is sustained, of a dismissal of the suit as prematurely brought.    (P. 399).

4.—Certified Question.

The question whether error in sustaining a demurrer should be held ground for reversal, since it involves a consideration of the whole record, is not determined by the Supreme Court on certified question.    (P. 399).

Questions certified from the Court of Civil Appeals for the Sixth District, in an appeal from Wichita County.

*Crane & Crane,* for appellants.

The Act of the 33d Legislature. Chapter 105, p. 194 (Vernon's Sayles' Ann. Civ. St., 1914, Articles 4874a, 4874b), entitled: "An Act to Prevent Fire Insurance Companies from avoiding liability for loss and damage to personal property under technical and immaterial provisions of the policy or contract of insurance where the act breaching such provision has not contributed to bring about the loss," has no application to the clause in a fire insurance policy, commonly called the "Record Warranty Clause," but only to those warranties and provisions the breach of which might have contributed to bring about the loss, but which in fact did not.   Commonwealth Ins. Co. v. Finegold, 183 S. W., 834.

Since it has been uniformly held by the Supreme Court and the other appellate courts of Texas, prior to the enactment of the Act of the 33d Legislature, Chapter 105, p. 194, that the "Record Warranty Clause" is not a technical and immaterial provision of a policy or contract of insurance, the Act aforesaid has no application to nor did the Legislature intend that it should apply to the "Record Warranty Clause," because by the caption thereof the Act is intended "to prevent fire insurance companies from avoiding liability for loss and damage to personal property under technical and immaterial provisions of the policy or contract of insurance," etc.   As to materiality of record warranty clause:   Brown v. Insurance Co., 89 Texas, 590; Sun Mut. Ins. Co. v. Roberts, Willis & Taylor Co., 90 Texas, 78; Western Ass. Co. v. Kemendo, 94 Texas, 367; Insurance Co. v. Cummings, 81 S. W., 707.   Where title is restrictive, act must be also:   Acts 33d Legislature, Chapter 105, p. 194; Cooley's Constitutional Limitations (7th Ed.), p. 211 et seq., and authorities therein cited; Lewis' Sutherland on Statutory Construction, Section 120; Ex parte Knight (Fla.) 120 Am. St. Rep. 191; West v. State (Fla.), 39 So., 412; State v. Bryan (Fla.), 39 So., 929.   State v. Palmes (Fla.), 3 So., 171; Holton v. State (Fla.), 9 So., 716; Webster v. Powell (Fla.), 18 So., 441; Wade v. Atlantic Lbr. Co. (Fla.), 41 So., 72; Memphis St. Ry. Co. v. Byrne (Tenn.), 104 S. W., 46; Patterson v. Close (N. J.), 83 Atl., 233; Wilson v. Smith (N. J.), 79 Atl., 272; Grover v. Trustees, 45 N. J. Law, 399; Hyman v. State (Tenn.) 9 S. W., 372, 1 L. R. A., 497.

The provisions of a fire insurance policy which provide that, in case of loss or damage, the assured shall submit to examinations under oath by any person named by the insurer, and subscribe the same, and that no suit or action for the recovery of any claim shall be sustainable in any court until after full compliance by the insured, are resonable and valid, and where a demand is made by the insurer upon assured to submit to an examintion at a reasonable time and place, the latter must comply with such demand as a condition precedent to instituting a suit.   Liverpool L. & G. Co. v. Cargill

(Okla.) 145 Pac., 1134; Sims v. Union Assur. Soc. (C. C.), 129 Fed., 804; Fireman's F. Ins. Co. v. Sims (Ga.), 42 S. E., 269; Pearlstine v. Ins. Co. (S. C.), 49 S. E., 4; Insurance Co. v. Filrath, 77 Ala., 194, 54 Am. Rep., 58; Harris v. Ins. Co., 35 Conn., 310.

The decision of the Commission of Appeals, approved by this Honorable Court in the case of McPherson v. Camden Fire Ins. Co., 222 S. W., 211 et seq., concludes the questions contained in the certificate from the Court of Civil Appeals of the Seventh Supreme Judicial District, and requires that both questions be answered in the affirmative.

The only other question involved is should appellants have pleaded the failure of appellees to submit to an examination under oath, as provided by the terms of the policies sued on, in abatement, or was the defense properly pleaded in bar. It is respectfully submitted that the defense was available by a plea in bar. Fire Association of Phila. v. Colgin, 33 S. W., 1004; Doxey v. Royal Ins. Co. (Tenn.) 36 S. W., 950; Insurance Co. v. Camp, 64 Texas, 521; Insurance Co. v. Chase, 89 Texas, 212; Benthall v. Hildreth, 68 Mass., 288.

*Smoot & Smoot*, for appellees.—By the express provisions of the Acts of the Thirty-third Legislature, Chap. 105, page 194, Entitled "An Act to Prevent Fire Insurance Companies from Avoiding Liability for Loss and Damage to Personal Property Under Technical and Immaterial Provisions of the Policy or Contract of Insurance where the Act Breaching such Provision Has Not Contributed to Bring About the Loss," the so called "Record Warranty Clause," which provides in substance (1) that the insured shall take inventories once a year and keep a set of books showing a complete record of all business subsequent to the taking of such inventory, the 1st. inventory to be taken within thirty days in case none has been already taken; (2) that the insured shall keep a complete set of books; and (3) the insured in the event of loss shall preserve all such records and deliver them to the insurer on pain of having his policy rendered void, has been rendered inoperative as a condition to avoid the policy. Springfield F. & M. Ins. Co. v. Nelms, 184 S. W., 1094; Continental Fire Ins. Co. v. Whitaker, 112 Tenn., 151, 79 S. W., 119, 105 Am. St. Rep., 916, 64 L. R. A., 451; Aurora Fire Ins. Company v. Johnson, 46 Ind., 315; Johnson v. Farmer's Ins. Co., 126 Iowa, 565, 102, N. W., 502; Albert v. Mutual Life Ins. Co., 122 N. C., 92; McGannon v. Michigan Millers Mutual Fire Ins. Co., 54 L. R. A., 739.

The case having proceeded to trial on the question of compliance with the "Record Warranty Clause" and the evidence having conclusively established, as shown by the findings of the court, that the insured had not breached such clause in the policy, the action

of the court in sustaining appellees' special exception to appellants' answer setting up such breach as a defense became immaterial, and any error arising therefrom would be harmless. Staples v. Word, 48 S. W., 751; Harle v. Texas Southern Ry. Co., 86 S. W., 1048; O'Brion v. Camp, 101 S. W., 557.

The case having proceeded to trial upon the question of plaintiffs' compliance with defendant's demand that they submit to an examination under oath, and the evidence having conclusively shown that the plaintiffs had not refused any proper demand by the defendants that they submit to examination, the action of the trial court in sustaining the plaintiffs' special exception to defendants' answer setting up failure to submit to such examination, became immaterial and any error arising therefrom would be harmless. Same authorities.

The provisions of the insurance policies requiring the insured to submit to examination under oath and providing that failure to comply therewith would prevent the insured from sustaining any action to collect on the policies in case of loss or damage, no time being specified for such examination, is complied with by the insured offering in good faith at the time of the filing of suit to submit to examination and continuing to hold themselves out as ready and willing so to do, whereupon alleged former breaches of such provisions will no longer furnish a defense to the suit and will be subject to demurrer. We invite your attention to the case of Merchants' & Mfrs. Lloyd's Ins. Exch. v. Southern Trading Co., 205 S. W., 352, recently decided by the Court of Civil Appeals at Fort Worth.

MR. CHIEF JUSTICE CURETON delivered the opinion of the court.

This cause is here on certified questions from the Court of Civil Appeals of the Seventh District.

The certificate, with the questions submitted, is as follows:

"Appellees, W. F. Driggers and T. J. Taylor, sued the appellants, Philadelphia Underwriters' Agency of the Fire Insurance Association of Philadelphia, and North British & Mercantile Insurance Company of London and Edinburgh, on two policies of fire insurance, issued by the said Insurance Companies respectively, one for the sum of $500 on merchandise and $200 on furniture and fixtures, and the other for the sum of $500 on merchandise and $100 on furniture and fixtures, by which said policies of insurance the appellees were insured against loss by fire of a stock of merchandise and the furniture and fixtures used in connection with the establishment.

"Appellants, in their answers, alleged that each of said policies contained the following provision:

" 'Record Warranty Clause.

The covenant is hereby made a part of this policy and a warranty upon the part of the assured: Section 1. The assured will take a complete itemized inventory of stock on hand at least once in each calendar year, and within twelve months of the last preceding inventory if such has been taken. Unless such an inventory has been taken within twelve calendar months prior to the date of this policy, and together with a set of books showing a complete record of business transacted since the taking of such inventory, is on hand at the date of this policy, one shall be taken within thirty days after the date of this policy, or in each and either case, this entire policy shall be null and void.

" 'Sec. 2. The assured will make and prepare, in the regular course of business, from and after the date of this policy, a set of books, which shall clearly and plainly present a complete record of business transacted, including all purchases, sales and shipments, both for cash and on credit, or this entire policy shall be null and void. The term 'complete record of business transacted,' as used above, is meant to include in said set of books a complete record of all the property which shall go into the premises and be added to the stock, and of all property taken from the stock, whether by the assured or by others, even though not technically purchases or technically sales.

" 'If the business of the assured under this policy be that of manufacturing, this complete record of business transacted must, in addition, show all the raw material received and all products manufactured therefrom, including the cost of manufacture, and must show waste in process of manufacture and must show all the raw material and manufactured property which is taken from the building described.

" 'Sec. 3. The assured will keep and preserve all inventories of stock taken during the current year, and also all those taken during the preceding calendar year, which are on hand when this policy is issued, and will keep and preserve all books which are then on hand, showing a record of business transacted during the current calendar year and the preceding calendar year.

" 'The assured will also keep and preserve all inventories taken after the issuance of this policy, and all books made and prepared after the issuance hereof, showing a record of business transacted.

" 'The books and inventories, and each of same, as called for above, shall be by the assured kept securely locked in a fireproof safe at night, and at all times when the building mentioned in the policy is not actually open for business, or, failing this, the assured shall keep such books and inventories and each of them, in some secure place not exposed to a fire which would destroy said building, and, in event of a loss or damage insured against to the personal prop-

erty mentioned herein, said books and inventories, and each of the same must be by the assured delivered to this Company for examinations, or this entire policy shall be null and void, and no suit or action shall be maintained hereon for any such loss.

" 'It is understood and agreed that this clause and the requirements thereof is one of the inducing causes to the acceptance of the risk herein assumed and the issuance of this policy, and that the terms and requirements hereof are material to the risk, and to this insurance, and to any loss or damage happening to the property described in this policy.

" 'It is further agreed that the receipt of such books and inventories, or the request for them or either of them, and the examination of the same, shall not be an admission of any liability under this policy, nor a waiver of any provision or condition of this policy, or of any defense to the same.' " "And in connection with this allegation the appellants alleged that the appellees wholly failed and refused to comply with each and all of the requirements and conditions enumerated in said record warranty clause, and that in consequence said policy was null and void, and the plaintiffs were not entitled to recover any sum whatever. The court below sustained a special exception to these allegations in the answer of each of the defendants, because the failure to comply with the provisions therein set out could not in any way contribute to the loss and therefore, under the provisions of the Act of 1913, page 194, Vernon's Sayles' Civil Statutes, Art. 4874a, constituted no defense.

"The appellants further pleaded that each of the policies sued on contained the following provision: 'The insured as often as required, shall exhibit to any person designated by this company all that remains of any property, herein described, and submit to examinations under oath by any person named by this company, and subscribe the same; and as often as required, shall produce for examinations all books, of account, bills, invoices and other vouchers, or certified copies thereof if originals be lost, at such reasonable place as may be designated by this company, or its representative, and shall permit extracts and copies thereof to be made.'

" 'No suit or action on this policy, for the recovery of any claim shall be sustainable in any court of law or equity until after full compliance by the insured with all the foregoing requirements.' "

"And in connection therewith each of the appellants further pleaded that after the fire they each demanded that the appellees each appear at a time and place named and submit to such examination, the time and place named being alleged to be in all things reasonable, and that said appellees and each of them refused to submit to such examination. Wherefore, they pleaded that the plaintiffs could not maintain said suit. This pleading followed the general denial and the plea of the record warranty clause. The ap-

pellees, by supplemental petition, excepted also to this plea as falling within the provision of the Act of 1913, but in the answer following the exception offered to submit to an examination. The case was not tried until a term of court succeeding the filing of these pleadings, at which time the court sustained the exception to said part of appellants' answers.

"A trial resulted in judgment for the plaintiffs and the case is now pending in this court on two assignments of error, questioning the ruling of the lower court in sustaining the exceptions above referred to.

"As the members of this court are unable to agree as to the disposition of the case and as any holding we may make would be in conflict with one or the other of two lines of decision of other courts of civil appeals, as later shown, we certify to your Honorable Court for decision the following questions:

"First: Did the court err in sustaining the exception to the pleading of the appellants, setting up the record warranty clause, as above stated?

"Second: Did the court err in sustaining the exception to the pleading of the appellants, setting up the provision for examination and its violation, as above stated, and will such action of the court require a reversal of the case?

The trial court held that the pleadings of the appellants to which the exception were sustained constituted no defense, because of the provisions of Chapter 105, General Laws passed by the Thirty-third Legislature. Section 1 of this Act reads:

"That no breach or violation by the insured of any of the warranties, conditions or provisions of any fire insurance policy, contract of insurance, or application therefor, upon personal property, shall render void the policy or contract, or constitute a defense to a suit for loss thereon, unless such breach or violation contributed to bring about the destruction of the property."

This Act has reference only to those warranties and provisions in policies the breach of which might contribute to or bring about a fire loss. McPherson v. Camden Fire Insurance Co., 222 S. W., 211; Providence-Washington Insurance Co. v. Levy & Rosen, 222 S. W., 216; Aetna Insurance Co. v. Waco Co., 222 S. W., 217; Merchants' & Mfrs.' Lloyd's Ins. Exch. v. Southern Trading Co., 229 S. W., 315; Humphrey v. National Fire Insurance Co., 231 S. W., 750.

The clauses in the policies sued on, to the pleading of which by appellants exceptions were sustained, are not within the purview of this Act. A violation of these provisions manifestly could not contribute to or bring about the destruction of property by fire.

In the case of Merchants' & Mfrs' Llyod's Ins. Exch. v. Southern Trading Co., cited above, the Commission of Appeals correctly held

that the record warranty clause contained in fire policies in the State
of Texas is not affected by the Act above quoted.

In the case of Humphrey v. National Fire Insurance Co., supra,
the Commission of Appeals held the provision in the policy requiring
the insured to submit to examination after loss to be a material one,
and that such provision was in no way affected by the Antitechni-
cality Law.

The Commission of Appeals, in this same case, also properly held
that a failure or refusal to submit to examination after loss does not
bar recovery, but merely suspends the right of recovery until the
examination is complied with; that such failure or refusal, there-
fore, is to be pleaded in abatement, and not in bar, and that the plea,
if sustained, results only in the dismissal of the suit as being pre-
maturely brought.

Answering the specific questions propounded by the Court of Civil
Appeals, we hold: that the court erred in sustaining exceptions to
the pleadings of appellants setting up the record warranty clause,
the provision for examination, and the alleged violation thereof by ap-
pellees.

The third inquiry contained in the certificate is, whether or not
the action of the trial court will require a reversal of the case. We
cannot answer this question without considering the entire record,
which we do not believe to be our province under this certificate.
We, therefore, leave the determination of that question for the Court
of Civil Appeals.